**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LSREF2 BARON, LLC

        Plaintiff,

vs.                                                                 Case No. 3:10-cv-576-J-32JBT

BEEMER & ASSOCIATES XLVII,
L.L.C., et. al.,

        Defendants.

---

## ORDER

Regions Bank ("Regions") filed suit against Beemer & Associates XLVII, L.L.C.

("Beemer") to collect on a promissory note and against Mike Ashourian as guarantor.[1]

This case is before the Court on Plaintiff's Amended Motion for Final Summary Judgment

(Doc. 19), to which defendants have responded (Doc. 47.)   The Court held oral argument

on the motion for summary judgment on September 26, 2011, the transcript of which is

incorporated by reference.  (Doc. 57.)  The Court also considers defendants' Motion to

Compel Discovery (Doc. 59), plaintiff's Motion to Substitute Party Plaintiff (Doc. 63), and

defendants' motions to strike (Docs. 66, 76, 81).

## I.  BACKGROUND

This dispute arises from a series of agreements between the parties relating to a

loan for the construction of improvements to certain real property.  Regions and Beemer

first entered into an ISDA Master Agreement (the "Swap Agreement"), which, among

---

[1] As discussed below, Regions subsequently sold the note to LSREF2 Baron, LLC, which
then sold the note to Wells Fargo Bank, N.A.

other things, provided terms applicable to all future transactions between the parties.

Doc. 1 at 6-26.  Regions and Beemer then entered into a Construction Loan, wherein

Regions agreed to lend a maximum principal amount of $5,250,000 to Beemer.  Doc. 19-

2.  The Construction Loan was evidenced by a promissory note (the "Note"), which

Beemer executed and delivered to Regions, in the same amount.  Doc. 1 at 29-36.

Ashourian executed and delivered a guaranty to Regions (the "Guaranty"), which

guaranteed Beemer's performance under the Construction Loan and the Note.  Doc. 1 at

40-46.

On June 2, 2010, Regions sent a letter to Ashourian and Beemer stating that

Beemer had defaulted on the Note by failing to make any monthly payments since May 1,

2010.  In the letter, Regions also demanded full and immediate payment on the Note and

listed the amounts that Beemer was obligated to pay.  Doc. 1 at 38-39.

On June 16, 2010, Regions sent a letter to Ashourian and Beemer which stated

that Beemer was in default of it obligations under the Swap Agreement.  The letter further

notified Beemer that all transactions under the Swap Agreement would be terminated on

June 21, 2010.  The letter also states: "Pursuant to the [Swap] Agreement, we will

provide to you on or as soon as reasonably practicable after the Early Termination Date a

statement of any amounts that may be due to Regions . . . and the details of the account

to which such amounts may be paid."  Doc. 1 at 37.  However, Regions has not provided

defendants with such a statement.  Doc. 46 at 5.

Regions filed suit against Beemer to recover under the Note and against

Ashourian to recover under the Guaranty.  In the Complaint, Regions claims damages of

2

$5,961,720.52, consisting of "the principal balance in the amount of $5,250,000.00, plus accrued but unpaid interest in the amount of $23,149.16, late fees of $850.62 through June 22, 2010 and the Swap Agreement Termination Fee of $687,720.74." Doc. 1 at 3. Regions also seeks interest and late fees accruing after June 22, 2010, court costs, and attorneys' fees. Id. After filing suit, Regions assigned all of its rights, title, and interest in the Beemer loan to LSREF2 Baron, LLC ("LSREF2"), (see Doc. 53-A), and the Court thus substituted LSREF2 as the party plaintiff in this case (Doc. 54).

The Court held a hearing on pending motions on September 27, 2011.  Doc. 57. At the hearing, defendants argued that LSREF2 had presented insufficient evidence of the transfer of the Note, that LSREF2 had not explained how it had arrived at its monetary calculations under the Swap Agreement, and that defendants should not be required to repay the Note at this time due to commercial impracticability.  Because Beemer had not properly raised these issues prior to the hearing, the Court ordered additional briefing.  Doc. 58.  After the hearing, LSREF2 assigned its interest in the Note to Wells Fargo Bank, N.A. ("Wells Fargo") and now seeks to substitute Wells Fargo as party plaintiff in this case.  Doc. 63.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  "The burden of demonstrating the satisfaction of this standard lies with

3

the movant." Branche v. Airtran Airways, 342 F.3d 1248, 1252-53 (11th Cir. 2003). In

determining whether summary judgment is appropriate, a court must draw inferences

from the evidence in the light most favorable to the nonmovant and resolve all reasonable

doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420

F.3d 1146, 1149 (11th Cir. 2005).

### III.      DISCUSSION

Plaintiff claims it is entitled to summary judgment because the undisputed facts

show that the Note is in default and that this default allows it to enforce the terms of the

Note and Guaranty. (Doc. 19 at 4.)  In its response to plaintiff's motion for summary

judgment, defendants do not assert that they are in compliance with their obligations

under the Note or Guaranty. (See Doc. 47.)[2]  Instead, they assert that, even though they

are in default under the Note and Guaranty, they nevertheless have no legal obligation to

pay at this time.

Defendants first assert that plaintiff cannot recover in this action because it has not

complied with its obligations under Section 6(d)(i) of the Swap Agreement, which states:

> On or as soon as reasonably practicable following the
> occurrence of an Early Termination Date, each party will make
> the calculations on its part, if any, contemplated by Section
> 6(e) and will provide to the other party a statement (I)
> showing, in reasonable detail, such calculations (including all
> relevant quotations and specifying any amount payable under

---

[2] Defendants make only the general allegation that "Regions has failed to substantiate its claim." Doc. 47 at 3. Moreover, although plaintiff presents arguments against each of the affirmative defenses asserted in defendants' Answer, in responding to the summary judgment motions defendants do not reply to these arguments or otherwise assert any affirmative defenses beyond the defenses discussed below.

4

Section 6(e)) and (2) giving details of the relevant account to
which any amount payable to it is to be paid.

Doc. 1 at 12.  Defendants claim that Regions' failure to provide such a statement

following termination of the Swap Agreement on June 21, 2010, "represents a failure of a

condition precedent to recovery by Regions against Defendants."  Doc. 47 at 3.

A condition precedent is "an event that must occur *before* performance of a

contractual duty becomes due."  Ginett v. Computer Task Group, Inc., 962 F.2d 1085,

1099 (2d Cir. 1992).[3]  "Conditions are not favored under New York law, and in the

absence of unambiguous language, a condition will not be read into the agreement."  Id.

at 1099-1100; see also Isreal v. Chabra, 537 F.3d 86, 93 (2d. Cir. 2008)("New York

courts are cautious when interpreting a contractual clause as a condition precedent

. . . .") (quotation omitted).

Plaintiff's obligation to provide a statement under Section 6(d)(i) of the Swap

Agreement is not a condition precedent to defendants' obligations.  There is no language

in Section 6(d)(i), or elsewhere in the Swap Agreement, which unambiguously states that

defendant's obligations do not arise until plaintiff provides the required statement.  In fact,

there is nothing in the Swap Agreement that would even suggest that the statement

required under Section 6(d)(i) is a condition precedent to defendants' payment

obligations.  Although plaintiff did not strictly comply with the procedures set out in

Section 6(d)(i) of the Swap Agreement, such minor noncompliance does not relieve

---

[3] The Swap Agreement provides that it will be governed by and construed in accordance
with New York law.  Doc. 1 at 22.

defendants of their contractual obligations.  See le Cordon Bleu, S.A. v. BPC Publ'g Ltd.,

451 F. Supp. 63, 71 (S.D.N.Y. 1978); F. Garofalo Elec. Co. v. New York University, 300

A.D.2d 186, 189 (N.Y. App. Div. 2002).

Second, defendants argue that, under the doctrine of temporary commercial

impracticability, they should be "temporarily excused from performance of the loan

obligations until the economic environment for commercial tenants has stabilized."  Doc.

67 at 6.  Essentially, defendants argue it is impracticable for them to pay on the Note

because unanticipated changes in the market have made it unable to secure tenants at

the expected rates.

The doctrine of commercial impracticability provides that:

> Where, after a contract is made, a party's performance is
> made impracticable without his fault by the occurrence of an
> event the non-occurrence of which was a basic assumption on
> which the contract was made, his duty to render that
> performance is discharged, unless the language or the
> circumstances indicate the contrary.

Rest. 2d Contracts § 261.[4]  "The important question in an impossibility inquiry is whether

an unanticipated circumstance has made performance of the promise vitally different

from what should reasonably have been within the contemplation of both parties when

they entered into the contract."  Ferguson v. Ferguson, 54 So.3d 553, 556 (Fla. 3d DCA

---

[4] The Restatement's approach to commercial impracticability has been cited in several Florida law cases.  See, e.g.,  City of Key West v. R.L.J.S. Corp., 537 So.2d 641 (Fla. 3d DCA 1989); Hancock v. Boyd, No. 5:11-cv-132/RS-EMT, 2001 WL 5082134 (N.D. Fla. Oct. 25, 2011).

2011).[5]

The defense of commercial impracticability does not apply to the undisputed facts of this case.  First, an economic downturn, even one as drastic and severe as the recent recession, is not the type of unanticipated circumstance that would relieve sophisticated business entities from their contractual obligations.  While the parties may not have thought a recession likely at the time they signed the agreements, the possibility of economic downturn should have reasonably been within their contemplation.  See Ferguson, 54 So.3d at 556 ("Economic downturns and other market shifts do not truly constitute unanticipated circumstances in a market-based economy."); Flathead-Michigan I, LLC v. Peninsula Development, LLC, No. 09-14043, 2011 WL 940048 (E.D. Mich. March 16, 2011) ("[T]he continuation of existing market and of the financial situation of the parties are not ordinarily such [basic] assumptions, so that mere market shifts or financial ability do not usually effect discharge.") (quoting Rest. 2d Contracts § 261, comment b); All Points Capital Corp. v. Boyd Brothers, Inc., 5:11-cv-116/RS-EMT, 2011 WL 2790170 (N.D. Fla. 2011) (same). Second, "simple inability to pay does not create an impossibility or impracticality which excuses a party's performance of his contractual allegations."  Bank of America, N.A. v. Shelbourne Development Group, Inc., No. 09-c-

---

[5] Although the court in Ferguson sometimes uses the term "impossibility" rather than "commercial impracticability," its analysis broadly applies to impossibility and "its cousins, impracticability and frustration of purpose." Ferguson, 54 So.3d at 556.  These doctrines are often grouped together under the rubric of "impossibility" because "the doctrine of impossibility does not require a showing of actual or literal impossibility of performance but only a showing of commercial impracticability." Seabord Lumber Company v. United States, 308 F.3d 1283, 1294 (Fed. Cir. 2002).  Despite defendants' assertions to the contrary, the court's analysis in Ferguson is thus applicable to this case.

4963, 2011 WL 829390, at \*5 (N.D. Ill. March 3, 2011) (quoting Days Inn of America, Inc. v. Patel, 88 F. Supp. 2d 928, 933 (C.D. Ill. 2000)); see also Hoosier Energy Rural Electric Co-Op, Inc. v. John Hancock Life Insurance Co., 582 F.3d 721 (7th Cir. 2009) ("'[I]mpossibility' doctrine never justifies failure to make a payment, because financial distress differs from impossibility."); Karl Wendt Farm Equip. Co. v. Int'l Harvester Corp., 931 F.2d 1112, 1118 (6th Cir.1991) ("[N]either market shifts nor the financial inability of one of the parties changes the basic assumptions of the contract such that it may be excused under the doctrine of impracticability.").[6]

Third, defendants argue summary judgment cannot be entered because factual issues exist regarding the ownership of the Note and Guaranty.  Doc. 67 at 9-10.  To establish ownership, plaintiff filed the Declaration of Marisa McGaughey (Doc. 80), which avers that Wells Fargo is the owner of the Note and Guaranty and attaches the Assignment Agreements between Regions, LSREF2, and Wells Fargo.[7]  Defendants filed a motion to strike the declaration, arguing that it is invalid because it was executed by McGaughey in her representative capacity on behalf of LSREF2 and Wells Fargo rather than in her individual capacity. Doc. 81 at 2-3.

Defendants' argument is without merit.  Rule 56(c)(4) states: "An affidavit or

---

[6] Defendants likely waived this defense by failing to raise it prior to the hearing on plaintiff's motion for summary judgment. Nevertheless, the Court has addressed the defense on the merits.

[7] Plaintiff also filed the Amended Affidavit of Marisa McGaughey (Doc. 75), which is identical in substance to the declaration. Although plaintiff has not acknowledged any flaw in the affidavit, the declaration was filed to cure the alleged deficiencies identified in defendants' motion to strike the affidavit (Doc. 76).

declaration used to support or oppose a motion must be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant or declarant

is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Although a

corporation itself cannot take an oath, "[c]orporations may offer testimony through their

corporate representatives in the form of affidavit" or declaration.  D'Aprile v. Unum Life

Ins. Co. Of Am., No. 2:09-cv-270-FTM-36SPC, 2010 WL 3810845, at *2 (M.D. Fla. Sept.

24, 2010).[8]  The McGaughey declaration states that its contents were based upon her

personal knowledge and that she has the authority to make the declaration as an

authorized representative of Wells Fargo and LSREF2.  Doc. 80.  The Court thus

considers the McGaughey declaration and determines that Plaintiff has submitted

sufficient evidence to show that Wells Fargo is the current holder of the Note and

Guaranty.[9]

---

[8] Defendants' reliance on Rowland v. California Men's Colony, 506 U.S. 194 (1993), is misplaced. Rowland merely states that a corporation cannot itself make an affidavit because "artificial entities cannot take oaths."  Id. at 204.  While a corporation cannot take an oath, a corporate representative may do so. See, e.g., id. at 204 ("Of course, it is true that courts have often coupled this recognition of a corporation's incapacity to make an affidavit with a willingness to accept the affidavit of a corporate officer or agent on its behalf even when the applicable statute makes no express provision for doing so."); Harrison-Hoge Indus. v. Panther Martin S.R.L., No. 05-cv-2851, 2008 WL 905892, at * 28 (E.D.N.Y. March 31, 2008)("It is axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of corporate books and records.").

[9] Defendants also submit the affidavit of Randall Whitfield, an employee of one of the companies owned by Ashourian.  This affidavit avers that, on October 24, 2011, an employee of LSREF2 told Whitfield over the phone that the Note and Guaranty were still owned by LSREF2.  Even if this evidence were admissible, it would not create a material dispute of fact on the issue of ownership.  See Webb-Edwards v. Orange Cnty. Sheriff's Office, 525 F.3d 1013, 1029 (11th Cir. 2008) ("The non-moving party must provide more than a mere scintilla of evidence to survive a motion for summary judgment as a matter of law.")

9

Fourth, defendants argue that "Plaintiff has failed to meet one or more conditions precedent under the SWAP Agreement," because "its calculation of the SWAP termination fee is unreliable and unsubstantiated."  Doc. 67 at 9.  Defendants contend the calculations are unreliable because plaintiff has failed to provide a "Market Quotation," as that term is used in the Swap Agreement.[10]

Again, defendants' argument is baseless.  In relevant part, the Swap Agreement provides that, upon early termination, "an amount will be payable equal to (A) the sum of the *Settlement Amount* (determined by the non-defaulting party) in respect of the Terminated Transactions and the Unpaid Amounts owing to the Non-defaulting Party less (B) the Unpaid Amounts owing to the defaulting Party."  Doc. 1 at 12 (emphasis added); see also id. at 20-21.  The "Settlement Amount" is defined as "the sum of: (a) Market Quotation . . . and (b) such party's *Loss* . . . for each Terminated Transaction . . . for which a Market Quotation cannot be determined . . . ."  Doc. 1 at 18 (emphasis added).  "Loss" is defined in turn as "an amount that party reasonably determined in good faith to be its total losses and costs . . . in connection with this Agreement."[11]  Determining a "Market Quotation" is thus not a "condition precedent" to payment under the Swap Agreement; instead, if a Market Quotation is not determined, the non-defaulting party

_____

[10] Defendants also filed a Motion to Compel Discovery (Doc. 59), which requests all documents relating to plaintiff's calculation of the Swap Termination Fee.  Because this motion was filed months after the close of discovery (and after the hearing on plaintiff's motion for summary judgment) it is due to be denied as untimely.

[11] The SWAP Agreement further provides that "[a] party may (but need not) determine its Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant market."  Doc. 1 at 16-17.

may still recover its losses and costs.  Moreover, the Swap Agreement provides that such

an amount "will be paid together with . . . interest thereon . . . at the Applicable Rate."

Doc. 1 at 12.

Although defendants' condition precedent argument is without merit, plaintiff has

not sufficiently explained how it arrived at its calculation of the Early Termination Fee.  In

its September 27, 2011 Order, the Court directed plaintiff to "file an affidavit that explains

how Plaintiffs arrived at their monetary calculations under the Swap Agreements."  Doc.

58.  Plaintiff filed the Affidavit of Paul Presley, which states that the "Early Termination

Fee is determined by subtracting the net amount reflected on the Floating Cash Flows

spreadsheet from the net amount reflected on the Fixed Cash Flows spreadsheet."  Doc.

65 at 3.  However, the affidavit does not explain what these cash flow spreadsheets

represent or why this calculation represents the amount due for early termination of the

Swap Agreement.[12]  The Court now having given plaintiff two opportunities to prove up

damages under the Swap Agreement, and remaining unpersuaded, the Court will decline

to grant summary judgment on these fees.

Accordingly, it is hereby

**ORDERED**:

1. Plaintiff's Amended Motion for Final Summary Judgment (Doc. 19) is

**GRANTED in part and DENIED in part** to the extent stated herein.

---

[12] It is also unclear why certain numbers are used, such as the 6.27% fixed rate of interest.  While the Court assumes that the Early Termination Fee assessed by plaintiff reflects Loss, plaintiff has not explicitly stated as much.

11

2.  No later than **January 20, 2012**, Plaintiff should file a proposed final judgment consistent with this Order, including any requests for attorneys' fees and costs (with supporting documentation).  (If plaintiff chooses to go to trial on the Swap Agreement damages, it must notify the Court by January 20, 2012 and may delay filing a proposed judgment until after trial.)  No later than **February 3, 2012**, defendants may file any objections to the proposed final judgment.

3.  Defendants' Motion to Compel Discovery (Doc. 59) is **DENIED**.

4.   Plaintiff's Motion to Substitute Party Plaintiff (Doc. 63) is **GRANTED**.  The Clerk is directed to substitute Wells Fargo Bank, N.A. as the plaintiff in this case.

5.  Defendants' motions to strike (Docs. 66, 76, 81) are **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of December, 2011.

TIMOTHY J. CORRIGAN
United States District Judge

js.
Copies:

counsel of record.